## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GLENN FRANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 25 C 5258 |
| | ) | |
| HIGHTOWER HOLDING, LLC, d/b/a | ) | |
| LEXINGTON WEALTH MANAGEMENT, | ) | |
| and KRISTINE PORCARO, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Glenn Frank is a sixty-nine-year-old financial advisor who since 2010 has worked at Lexington Wealth Management ("LWM"), a firm acquired by Hightower Holding, LLC ("Hightower") in 2019. He filed this age discrimination case against Hightower and Kristine Porcaro, a co-founder and President of LWM, alleging that Defendants engaged in a campaign to phase Frank out of work and, essentially, compel retirement. Before the Court is Defendants' partial motion to dismiss and to strike certain allegations from the complaint.

## BACKGROUND

For purposes of its analyses under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Frank as the nonmoving party.

*See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (providing standard for Rule 12(b)(6) motion to dismiss for failure to state a claim); *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017) (providing standard for Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction). The complaint alleges as follows.

Frank is a Personal Financial Specialist and formerly held certifications as a Certified Financial Planner and Certified Public Accountant. Frank has nearly four decades of experience in investing, planning, financial counseling, and investment-related tax strategies. Frank writes articles and books in his field and was the founding director of a master's program in financial programming in 1996. He has taught investment courses to financial advisers and the public.

In or about 2010, Frank began working for LWM, initially as Director of Investment Tax Strategy, and was appointed to LWM's Investment Committee.[1] Upon his hiring, Frank brought with him fifty clients with whom he had developed longstanding relationships; these clients followed him from his prior employer, Wells Fargo, to LWM. Most of Frank's clients have followed him from various investment firms over the years.

In or about 2016, Frank became a 20-hour-per-week employee, but his title and responsibilities remained essentially the same. At some point after that, LWM

---

[1] Registered investment advisory firms, like LWM, generally have an Investment Committee that determines overall investment strategy and policy, sets asset-allocation targets, oversees portfolio performance, monitors risks, and supervises managers.

unilaterally changed Frank's role on client services teams to "member emeritus," which resulted in Frank no longer having "final say" on his accounts. The "final say" went to younger advisors, although Frank's duties with respect to clients remained the same. Frank did not learn of these changes until late 2021.

Hightower acquired LWM in 2019, and Frank signed a Standard Protective Agreement ("SPA"), which contained a twelve-month post-employment non-solicitation and non-interference clause. Despite a change of job title to Director of Education around the time of the acquisition, Frank continued to provide investment and financial planning services to his own clients.

In 2021, Frank was removed from the Investment Committee[2] without notice. When Frank questioned the reason for the removal, Porcaro told him that it was to make room for "younger advisors."

In various meetings involving Frank, Porcaro, James Hastings, Frank's direct supervisor, and Michael Tucci, LWM's CEO and co-founder, Porcaro and Tucci discussed age—including Frank's age—and the need to "turn over the reins to younger successors so the firm could grow." They also discussed the possibility of imposing a retirement age on partners. Frank was told that if he did not take a role subordinate to younger advisors, he would be removed from his clients' service teams. Frank has told Tucci, Porcaro, and Hastings that he has no plans to retire.

---

[2] At some point Frank must have been reappointed to the Investment Committee, because he alleges that he was removed from the Investment Committee *again* in September 2023.

Frank alleges that Hightower has provided inaccurate information to his clients, including that Frank would be "phasing out," was not available, and was spending a lot of time in Florida and elsewhere. At some point, Frank learned that Hightower had removed Frank from many of his accounts and given them to younger advisors without notification or Frank's knowledge.

In late fall 2023, Hightower cut Frank's pay in half, effective January 2, 2024, and reduced his schedule from 20 to 10 hours per week. Hightower also "effectively" removed the servicing of his clients from his job responsibilities and prohibited him from contacting his clients about their portfolios without approval of junior advisors. No other employee had their salaries reduced.

On December 22, 2023, Frank complained to Human Resources of age discrimination. Hightower denied his allegation without conducting the good-faith investigation required by Massachusetts law.

On March 25, 2024, Frank informed Hightower that he intended to file a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). Porcaro responded to Frank's email, stating that she was "[v]ery sad" Frank had decided to "end" his relationship with LWM "this way." Frank responded that he was not leaving his employment with Hightower. Later that day, Hightower suspended Frank from employment with pay for six weeks purportedly because of an email Frank sent to clients. During his suspension, Frank did not have access to his clients and email,

and Hightower told Frank's clients that he was "on leave." Frank filed his MCAD complaint on March 26, 2024.

Hightower reinstated Frank from his leave on May 7, 2024, with a new job description that explicitly required him to transition his clients to younger advisers. As a result, Frank's client group rapidly declined. Throughout 2024, Hightower continued to restrict and impede Frank's interactions with his own clients.

On August 1, 2024, Frank filed suit in the Suffolk Superior Court in Massachusetts. On August 29, 2025, the Suffolk Superior Court granted Frank's motion for a preliminary injunction, enjoining enforcement of Hightower's non-solicitation restrictions as to Frank's pre-LWM clients and those Hightower clients with whom Frank had no interaction. Hightower then moved to dismiss the case based on the forum-selection language contained in the SPA. The Suffolk Superior Court granted Hightower's motion and held that Frank must litigate his claims in Illinois. The court also concluded that Frank had stated viable interference and aiding and abetting claims against Porcaro. The case was dismissed on December 13, 2024.

Three days later, Frank met with Hastings for his annual performance review. In a meeting with Porcaro and Hastings three days after that, on December 19, 2024, Hightower terminated Frank's employment. Hastings said that it was because Frank had received a poor annual performance rating (for the first time in Frank's career). Frank has had great difficulty finding other employment.

Frank filed suit against Hightower and Porcaro in this Court on May 12, 2025. Against Hightower, Frank brings claims for age discrimination and retaliation under the ADEA and Massachusetts state law. Against Porcaro, Frank brings claims for interference and aiding and abetting age discrimination under Massachusetts state law. Frank also seeks a declaratory judgment that the restrictive covenants in the SPA are null and void.

Defendants move to dismiss Frank's declaratory judgment claim for lack of standing under Rule 12(b)(1) and to dismiss the interference and aiding and abetting claims against Porcaro for failure to state a claim under Rule 12(b)(6). Defendants also move to strike any factual allegations in the complaint related to age discrimination alleged to have occurred before May 31, 2023.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A standing challenge under Rule 12(b)(1) typically "can take the form of a facial or a factual attack on the plaintiff's allegations." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). A facial attack "tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Id.* A facial attack "require[s] only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction."

6

*Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis omitted).  A factual challenge, however, contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient.  *Id.* at 444 (emphasis in original) (cleaned up).  In reviewing a factual challenge, the Court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists.  *Id.*  In other words, "[a] facial challenge looks at the curtain drawn down by the plaintiff in the complaint.  But a factual challenge looks behind the curtain, and takes a peek at what's really going on behind the scenes." *Bueno v. Experian Info. Sols., Inc.*, 2024 WL 4378526, at *4 (N.D. Ill. 2024).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.      Rule 12(b)(1) Motion to Dismiss

Defendants argue Frank lacks standing to pursue his declaratory judgment claim because there is no actual controversy and because he fails to allege what plausible injury he has suffered resulting from his adherence to what Defendants refer to as the "amended restrictive covenants."[3]  Defendants further contend that Frank can neither show that Hightower will ever seek to enforce the original covenants, nor explain how the covenants are unenforceable.

Defendants assert that because the SPA's restrictive covenants were amended by the Waiver Letter, Frank's complaint "distorts the scope of the restrictive covenants Hightower could potentially seek to enforce against Plaintiff at some unknown time in the future, if ever."  Dkt. # 14, at 2. Hightower says it has never initiated an SPA enforcement action against Frank, and the Waiver Letter moots much of Count I because it "negates any contention that Hightower intends to enforce SPA [Section] 4 beyond the limited and permissible scope of what is stated in that letter (assuming

---

[3] Defendants attach to their motion a December 19, 2024 "Waiver Letter" to Frank purporting to clarify the scope of his non-solicitation obligation, thereby amending the restrictive covenants Frank takes issue with.  The letter states, in pertinent part, "Hightower shall only seek enforcement of your non-solicitation obligation as to the clients, advisors, and employees of Lexington to whom you provided services or about whom you learned or had access to confidential information concerning (*e.g.*, SalesForce records, performance reports), in each case, in connection with your employment with Hightower/Lexington."  Dkt. # 14-1, at 1.  Frank contends extrinsic evidence cannot be considered without converting Defendants' motion into one for summary judgment and urges the Court to disregard the Waiver Letter in its *Rule 12(b)(6)* analysis.  *See* Dkt. # 20, at 14. He says nothing, however, of the Court's *Rule 12(b)(1)* analysis.  In any event, even considering the Waiver Letter, the Court concludes Frank's declaratory judgment claim survives Defendants' motion to dismiss.

*arguendo* that a future enforcement action were to even occur)." *Id.* Frank, on the other hand, alleges a clear controversy exists "regarding whether the non-solicitation, non-service and confidentiality provisions of the SPA that would prohibit Plaintiff from soliciting or accepting business from his own clients, or retaining their names or contact information, following a separation from Hightower are enforceable." Dkt. # 1, ¶ 148.

"Article III of the Constitution dictates that federal courts may only adjudicate actual cases or controversies." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 436 (7th Cir. 1994) (internal quotation marks omitted); 28 U.S.C. § 2201 (declaratory judgment may be granted in "a case of actual controversy"); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). To demonstrate standing for a declaratory judgment, a party must allege "that he has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant's conduct." *Highsmith*, 18 F.3d at 436–37 (cleaned up); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (in the context of an action for declaratory judgment, the Constitution's case-or-controversy provision requires that a plaintiff "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a" declaration (internal quotation marks omitted)). Moreover, "the alleged harm must be actual or imminent, not conjectural or hypothetical." *Highsmith*, 18 F.3d at 437 (internal quotation marks omitted).

For standing under Article III, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that

is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Establishing standing is the plaintiff's burden and "must be secured at each stage of the litigation." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007–08 (7th Cir. 2021) (cleaned up).

The parties point to little case law on the subject of declaratory judgments and restrictive covenants. Hightower, for its part, hangs its hat on this Court's ruling in *Brunner v. Liautaud*, 2015 WL 1598106 (N.D. Ill. 2015) (Kocoras, J.). In *Brunner*, Jimmy John's employees sought a declaratory judgment and injunctive relief regarding confidentiality and non-competition agreements. Analogizing non-compete agreements to a patent law case identified two principles: the plaintiffs must have a "reasonable apprehension" of a lawsuit for violating the non-competition agreement, and they must allege that they were preparing to engage or had engaged in conduct that would compete with the defendants.

Plaintiff Brunner's apprehension stemmed from confusion about the terms of the agreements and a vague assertion of disclosing "certain information," which the Court found too tenuous to constitute a reasonable apprehension of litigation. Similarly, plaintiff Turowski's claim was based on numerous uncertain factors, such as whether

10

her former employer was a competitor of her new employer under the non-competition agreement. Thus, neither plaintiff had alleged a sufficient injury to confer standing. That conclusion was bolstered by affidavits from the defendants stating their intention not to enforce the agreements against the plaintiffs in the future. These affidavits satisfied the burden of showing that the challenged conduct would not recur, and the lack of any prior enforcement of the agreements against the plaintiffs further diminished their argument.

The instant case is distinguishable from *Brunner*. Here, Frank alleges that he has experienced "great difficulty finding other employment." Dkt. # 1, ¶ 145. He claims that "Hightower's litigious reputation and its position on the SPA, has discouraged prospective employers from considering and hiring Mr. Frank." *Id.* ¶ 146. In a nutshell, Frank claims that "the threat of litigation from Hightower is a serious impediment to Plaintiff securing new employment or to Plaintiff starting his own venture[.]" *Id.* ¶ 149. "Of course the threat of suit, however immediate, is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (cleaned up). And although a defendant's threat "need not necessarily include certain magic words regarding litigation to confer standing, it must convey an imminent intent to do *something* that will harm the plaintiff." *Rite-Hite Co., LLC v. Niagara Bottling, LLC*, 2019 WL 1778957, at *4 (E.D. Wis. 2019) (emphasis in original).

The Waiver Letter, despite the purported amendment to the SPA's restrictive covenants, could reasonably be construed as a threat of litigation. The Waiver Letter references "the obligation that you owe to Hightower under the terms of" the SPA and emphasizes that "Hightower takes these obligations seriously." Dkt. # 14-1, at 1. Additionally, Frank cites examples of cases in which Hightower sought to enforce restrictive covenants in similar or identical agreements where the courts concluded, in the preliminary injunction context, that Hightower's restrictive covenants are likely unenforceable. *See*, *e.g.*, *Hightower Holding, LLC v. Kedir*, 2024 WL 3398361, at *8 (N.D. Ill. 2024); *HighTower Holding, LLC v. Gibson*, 2023 WL 1856651 (Del. Ch. 2023); *Frank v. Hightower Holding, LLC*, 2024 WL 4051733 (Mass. Super. 2024). Frank's allegations amount to "more than an avowal of [his] fear of litigation." *See Bland v. Edward D. Jones & Co., L.P.*, 375 F. Supp. 3d 962, 974 (N.D. Ill. 2019). In the Court's view, a clear controversy exists, and Frank's allegations of harm are sufficient to confer Article III standing. Defendants' motion to dismiss Count I is denied.

## II.     Rule 12(b)(6) Motion to Dismiss

Before moving to dismiss the claims against Porcaro, Defendants first argue that any factual allegations related to age discrimination alleged to have occurred before May 31, 2023, must be disregarded and should be stricken from the complaint. This is because both Massachusetts state law and federal law require an individual to file a

complaint within 300 days of the alleged discriminatory act, and Frank first filed an MCAD age discrimination complaint on March 26, 2024.

In response, Frank invokes the continuing violation doctrine. Under the continuing violation doctrine, a plaintiff may obtain relief for a time-barred act of discrimination if he can link it with acts that fall within the statutory limitations period. *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000); *see also Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 396–97 (7th Cir. 1999) (explaining that the court will treat the series of continuing violations as one continuous act ending within the limitations period); *Crocker v. Townsend Oil Co.*, 979 N.E.2d 1077, 1084–85 (2012) (continuing violation doctrine in discrimination cases arising under Mass. Gen. Law ch. 151B, § 4 allows plaintiffs to recover for damages occurring outside the limitations period as long as there is a discrete violation within the statute of limitations period to anchor the earlier claims). However, the continuing violation doctrine doesn't apply when the time-barred incident alone should have triggered the plaintiff's awareness that his rights had been violated. *See Simpson v. Borg-Warner Auto, Inc.*, 196 F.3d 873, 875–76 n.1 (7th Cir. 1999).

Here, Frank knew of specific discriminatory acts occurring prior to May 2023. For example, in 2021 he learned that he was removed from the Investment Committee to make room for "younger" advisors. Frank also learned of the change in his role to "member emeritus" in 2021, which resulted in younger advisors having the "final say" on his accounts. Nothing prevented Frank from filing a discrimination charge based on

these events, and therefore the continuing violation doctrine likely does not apply. Nevertheless, the Court declines to strike these allegations from the complaint at this time. Defendants' argument is one better-suited for summary judgment with a more fulsome factual record.

As for the claims against Porcaro, Frank asserts two state law claims against Porcaro specifically: interference with his rights under the Massachusetts employment discrimination statute in violation of Mass. Gen. Laws ch. 151B, § 4(4A) (Count VI) and aiding and abetting age discrimination in violation of Mass. Gen. Laws ch. 151B, § 4(5) (Count VII). The Massachusetts state court declined to dismiss both of these claims, finding the allegations in the complaint sufficient. *See Frank v. Hightower Holding, LLC*, 2024 WL 5360136, at *9 (Mass. Super. Nov. 21, 2024). Frank argues the "law of the case" doctrine applies, and the Court need not reconsider the Massachusetts state court decision declining to dismiss these claims against Porcaro. However, whether or not the doctrine applies, the result is the same.

In Count VI, Frank alleges that Porcaro interfered with his rights under Section 4(4A) by "attempting to force him into 'retirement' and otherwise negatively affecting the terms and conditions of his employment all because of his age and because of his opposition to the discrimination he experienced." Dkt. # 1, ¶ 177. Under Section 4(4A), no "person, employer, [or] labor organization" may "discharge, expel or otherwise discriminate against any person . . . because he has filed a complaint, testified or assisted in any proceeding" covered by the statute. Mass. Gen. Laws ch. 151B,

§ 4(4). Further, no "person [may] coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected" by the antidiscrimination statute. *Id.* § 4(4A).

To state a claim for relief under Section 4(4A), Frank must allege facts sufficient to establish that (1) he engaged in protected activity; (2) he suffered a materially adverse action; and (3) the adverse action was linked to his protected activity. *Dixon v. Int'l Bd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007). To establish a claim for interference under Section 4(4A), Frank "must show that [Porcaro] interfered with [his] rights in deliberate disregard of those rights. Deliberate disregard requires an intent to discriminate." *Hussey v. East Coast Slurry Co., LLC*, 2022 WL 617568, at *9 (D. Mass. Mar. 1, 2022) (internal quotation marks omitted). The allegations are sufficient to state a viable Section 4(4A) claim against Porcaro. In response to being informed that Frank would be filing a charge with MCAD, Porcaro wrote in an email that she was "sad" Frank was "end[ing]" his relationship with LWM. Dkt. # 1, ¶ 94. The Court agrees with the state court that that statement could be considered a threat given that Frank had purportedly conveyed on many occasions prior to Porcaro's email that he had no intention of leaving the company or retiring.

The Court reaches the same result with respect to the aiding and abetting claim under Mass Gen. Laws ch. 151B, § 4(5), which makes it unlawful for any person to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." To maintain a claim against Porcaro under Section 4(5),

15

Frank must allege facts sufficient to establish that: (1) that Porcaro committed "a wholly individual and distinct wrong separate and distinct from the claim in main"; (2) that Porcaro shared an intent to discriminate not unlike that of the alleged principal offender; and (3) that Porcaro knew of her supporting role "in an enterprise designed to deprive [Frank] of a right guaranteed him . . . under G. L. c. 151B." *Lopez v. Commonwealth*, 978 N.E.2d 67, 82 (Mass. 2012) (internal quotation marks omitted). Here, as stated above, Porcaro's email could be construed as a threat. Moreover, Frank alleges, albeit on information and belief, Porcaro made or was substantially involved in the decisions to demote Frank, cut his compensation, and ultimately terminate his employment with Hightower. Although it's a close call, Frank's allegations pass muster—for now.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [13] is denied. Defendants must answer the complaint by 10/8/2025. A telephonic status hearing is set for 10/14/2025 at 10:10 a.m. For the telephonic status hearing, parties are to use the following call-in number : 1-6504793207, access code 2300 000 6287 or the following link https://us-courts.webex.com/meet/Judge_Kocorasilnd.uscourts.gov. When using the link, Counsel must type in their name when joining the call. Throughout the call, each speaker will be expected to identify themselves for the record before speaking.

It is so ordered.

Dated: 9/16/2025

Charles P. Kocoras
United States District Judge